**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:   (818) 532-6499
E-mail: jpafiti@pomlaw.com

**Counsel for Plaintiff**

*- additional counsel on signature page -*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD COOK, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> OBALON THERAPEUTICS, INC., ANDREW P. RASDAL, WILLIAM JOHN PLOVANIC, and NOOSHIN HUSSAINY, <br><br> Defendants | Case No.  **'18 CV 0407 CAB RBB** <br><br> **CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

Plaintiff Harold Cook ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and his own acts, and information and belief as to all other matters, based upon, *inter alia*,

1

the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Obalon Therapeutics, Inc. ("Obalon" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Obalon securities: (i) pursuant and/or traceable to Obalon's false and misleading Registration Statement and Prospectus, issued in connection with the Company's initial public offering on or about October 5, 2016 (the "IPO" or the "Offering"); and/or (ii) on the open market between October 5, 2016 and January 23, 2018, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Obalon Therapeutics, Inc. is a medical device company that focuses on developing and commercializing medical gastric balloons for weight loss therapy.  The

Company claims that its initial product offering is the Obalon balloon system, a U.S. Food and Drug Administration ("FDA") approved swallowable, gas-filled intra-gastric balloon designed to provide progressive and sustained weight loss in obese patients.

3.     Founded in 2008, the Company is headquartered in Carlsbad, California, and its stock trades on the NASDAQ Global Market ("NASDAQ") under the ticker symbol "OBLN."

4.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company recognized revenue in violation of Generally Accepted Accounting principles ("GAAP"); (ii) the Company lacked adequate internal controls over accounting and financial reporting; and (iii) as a result, Obalon's public statements were materially false and misleading at all relevant times.

5.     On January 23, 2018, Obalon issued a press release entitled "Obalon Announces Termination of Public Offering of Common Stock," revealing that "a purported whistleblower contacted KPMG LLP, the Company's independent auditors, to make certain allegations relating to allegedly improper revenue recognition during the Company's fourth fiscal quarter of 2017."   The press release further stated that "Obalon's Audit Committee will oversee an internal investigation of these allegations."

6.      On this news, Obalon's share price fell $1.73, or 33.33%, to close at $3.46 on January 23, 2018, on unusually heavy volume.  The $3.46 closing price represented a total decline of $11.54, or nearly 77%, from the IPO price of $15.00 per share.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. §78aa).

10.      Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Obalon transacts business in this District, and the Company's principal executive offices are located within this Judicial District.

11.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.     Plaintiff, as set forth in the accompanying Certification, purchased Obalon securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

13.     Defendant Obalon is incorporated in Delaware, with principal executive offices located at 5421 Avenida Encinas, Suite F, Carlsbad, California 92008.  Obalon's common stock trades on the NASDAQ under the ticker symbol "OBLN."

14.     Defendant Andrew P. Rasdal ("Rasdal") has served as the Company's Chief Executive Officer ("CEO"), President and Director since June 2008.  Rasdal signed or authorized the signing of the Company's Registration Statement filed with the SEC.

15.     Defendant William John Plovanic ("Plovanic") has served as the Company's Chief Financial Officer ("CFO") and Secretary since March 2016.  Plovanic signed or authorized the signing of the Company's Registration Statement filed with the SEC.

16.     Defendant Nooshin Hussainy ("Hussainy") has served as the Company's Vice President of Finance since December 2011.  Hussainy signed or authorized the signing of the Company's Registration Statement filed with the SEC.

17.     The Defendants referenced above in ¶¶ 14-16 are sometimes referred to herein as the "Individual Defendants."

18.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Obalon's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. Each Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as each of those statements were "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

19.    Obalon is a medical device company that develops and commercializes medical devices to treat obese and overweight people by facilitating weight loss. The Company's initial product offering is the Obalon balloon system, an FDA approved swallowable, gas-filled intra-gastric balloon designed to provide progressive and sustained weight loss in obese patients.

20.    On September 9, 2016, Obalon filed a registration statement on Form F-1 with the SEC in connection with the IPO. The registration statement was subsequently amended, with the final amended registration statement filed on Form F-1/A with the SEC on September 26, 2016 (collectively, the "Registration Statement").

21.    The Registration Statement contained a preliminary prospectus. The final prospectus (the "Prospectus") was filed with the SEC on October 6, 2016.   Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

22.    On October 5, 2016, the SEC declared the Registration Statement effective.

23.    On or about October 5, 2016, the Company completed its IPO, issuing 5,000,000 shares at a price of $15.00 per share and raising net proceeds of approximately $67.2 million.

**Materially False and Misleading Statements Issued During the Class Period**

24.     The Class Period begins on October 5, 2016, when the Company completed its IPO.  On October 6, 2016, the Company filed its Prospectus with the SEC, which forms part of the Registration Statement.   In the Prospectus, the Company stated the following regarding GAAP compliance and revenue recognition:

**CRITICAL ACCOUNTING POLICIES AND ESTIMATES**

Management's discussion and analysis of our financial condition and results of operations is based on our financial statements, which have been prepared in accordance with U.S. generally accepted accounting principles, or GAAP. The preparation of these financial statements requires us to make estimates and assumptions for the reported amounts of assets, liabilities, revenue, expenses and related disclosures. Our estimates are based on our historical experience and on various other factors that we believe are reasonable under the circumstances, the results of which form the basis for making judgments about the carrying value of assets and liabilities that are not readily apparent from other sources. Actual results may differ from these estimates under different assumptions or conditions and any such differences may be material.

While our significant accounting policies are more fully described in the notes to our financial statements appearing elsewhere in this prospectus, we believe the following discussion addresses our most critical accounting policies, which are those that are most important to our financial condition and results of operations and require our most difficult, subjective and complex judgments.

**Revenue recognition**

Revenue relates to sales of components of the Obalon balloon system, which includes the balloon and accessory kit, EzFill inflation system, pre-filled can of gas and placebo capsule. As of June 30, 2016, the product is sold to one customer, Bader, a related party and healthcare product distributor based in Sufat, Kuwait. We recognize revenue when the following revenue recognition criteria are met:

➢  Persuasive evidence of an arrangement exists. We consider this criterion satisfied when we have an agreement or contract in place with the customer.

➢  Delivery has occurred. Our standard terms specify that title and risk of loss transfers upon shipment to customer. We use third-party shipping documents to verify that title has transferred.

8

> ➤ The selling price is fixed or determinable. We assess whether the sales price is fixed or determinable at the time of the transaction. Sales prices are documented in the executed sales contract or purchase order received prior to shipment. Our standard terms do not allow for trial or evaluation periods, rights of return or refund, payments contingent upon the customer obtaining financing or other terms that could impact the customer's obligation.

> ➤ Collectability is reasonably assured. We assess whether collection is reasonably assured based on a number of factors, including the customer's past transaction history and credit worthiness.

***

## UNAUDITED CONDENSED CONSOLIDATED STATEMENTS OF OPERATIONS AND COMPREHENSIVE LOSS

(in thousands, except shares and per share data)

|  | Six months ended June 30, | |
| --- | --- | --- |
|  | 2015 | 2016 |
| Revenue: | | |
| Revenue | $      224 | $        — |
| Revenue, related party | 1,739 | 1,848 |
| Total revenue | 1,963 | 1,848 |
| Cost of revenue | 1,205 | 1,294 |
| Gross profit | 758 | 554 |
| Operating expenses: | | |
| Research and development | 5,968 | 5,098 |
| Selling, general and administrative | 1,679 | 2,975 |
| Total operating expenses | 7,647 | 8,073 |
| Loss from operations | (6,889) | (7,519) |
| Interest expense, net | (263) | (290) |
| Gain from change in fair value of warrant liability | 11 | 119 |
| Other expense, net | (16) | (22) |
| Net loss | (7,157) | (7,712) |
| Other comprehensive income | 10 | 4 |

| | | |
|---|---|---|
| Net loss and comprehensive loss | $  (7,147) | $  (7,708) |
| Net loss per share, basic and diluted | $  (12.51) | $  (13.37) |
| Weighted-average common shares outstanding, basic and diluted | 572,195 | 576,757 |
| Pro forma net loss per share, basic and diluted | | $  (0.81) |
| Pro forma weighted-average common shares outstanding, basic and diluted | | 9,691,211 |

25.     The Registration Statement was signed by the Individual Defendants.

26.     On November 10, 2016, Obalon filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2016 (the "3Q 2016 10-Q").   The 3Q 2016 10-Q was signed by Defendants Rasdal and Plovanic. The 3Q 2016 10-Q also stated that the Company's financial statements were "prepared in accordance with United States generally accepted accounting principles, or U.S. GAAP."

27.     The 3Q 2016 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Rasdal and Plovanic, who certified that:

> 1. I have reviewed this Quarterly Report on Form 10-Q of Obalon Therapeutics, Inc.;
>
> 2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;
>
> 3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a- 15(f) and 15d-15(f)) for the registrant and have:

(a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in the report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(c) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting.

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or person performing the equivalent functions):

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

28. On February 23, 2017, Obalon issued a press release entitled, "Obalon Therapeutics, Inc. Announces Fourth Quarter and Full Year 2016 Financial Results." The press release stated in relevant part:

**Fourth Quarter 2016 Results**

11

The Company reported total revenues of $0.8 million for the fourth quarter, compared to $1.0 million for the fourth quarter of 2015. Net loss was reported at $7.5 million compared to a net loss of $4.8 million in the fourth quarter of 2015 and net loss per share for the quarter was $0.51 as compared to net loss per share of $8.42 in the fourth quarter of 2015.

Cost of goods sold was $0.9 million during the three months ended December 31, 2016, up from $0.7 million for the prior year period. Gross profit for the fourth quarter was a negative $0.1 million, resulting in a negative gross margin of 13%, compared to a positive gross profit of $0.3 million and 33% for the fourth quarter of 2015.

Research and Development expense for the fourth quarter totaled $2.6 million, down from $3.8 million in the fourth quarter of 2015, and Selling, General and Administrative, or SG&A, expense increased to $4.8 million for the fourth quarter, compared to $1.2 million in the fourth quarter 2015.

Operating loss for the fourth quarter was $7.5 million, compared to an operating loss of $4.7 million for the fourth quarter of 2015. Net loss for the quarter was $7.5 million, or $0.51 per share as compared to a net loss of $4.8 million or $8.42 per share for fourth quarter of 2015.

At December 31, 2016, cash, cash equivalents and short term marketable securities were $75.5 million and long-term debt was $9.9 million.

On October 12, 2016, Obalon closed an initial public offering of 5.0 million shares were at a price of $15.00 per share for gross proceeds of $75.0 million and net proceeds of $67.2 million.

**Full Year 2016 Results**

Obalon reported full year 2016 total revenues of $3.4 million, a decrease from $4.0 million for the full year 2015.

Gross profit for the full year 2016 was $0.6 million, which equates to a gross margin of 17%. This compared to gross profit of $1.5 million in the prior year and a gross margin of 38%.

Operating loss was $19.5 million as compared to an operating loss of $14.9 million in the prior year.

Net loss for the full year 2016 increased to $20.5 million, or $4.85 per share, compared to a net loss of $15.6 million, or $27.14 per share, in the prior year.

29.     On February 23, 2017, Obalon filed an annual report on Form 10-K with the

SEC, announcing the Company's financial and operating results for the quarter and fiscal

year ended December 31, 2016 (the "2016 10-K").  The 2016 10-K was signed by Defendants Rasdal and Plovanic, and affirmed the Company's financial results announced in the press release issued on that same day. The 2016 10-K stated that the Company's financial statements were "prepared in accordance with U.S. generally accepted accounting principles, or GAAP."   The 2016 10-K also contained signed certifications pursuant to SOX by Defendants Rasdal and Plovanic, substantially similar to the certifications described in ¶27, *supra*.

30.    On May 10, 2017, Obalon issued a press release entitled, "Obalon Announces First Quarter 2017 Financial Results." The press release stated in relevant part:

> The Company reported total revenues of $1.5 million for the first quarter of 2017, compared to $1.1 million for the first quarter of 2016. All revenues in the first quarter 2017 were realized from sale of the Obalon balloon system in the United States, compared to all revenues in the first quarter of 2016 which were from sales to our distributor in the Middle East. Net loss was reported at $7.7 million compared to a net loss of $3.6 million in the first quarter of 2016 and net loss per share for the quarter was $0.47 as compared to net loss per share of $6.22 in the first quarter of 2016.
>
> Cost of goods sold was $0.8 million during the three months ended March 31, 2017, up from $0.6 million for the prior year period. Gross profit for the first quarter of 2017 was $0.6 million, resulting in a gross margin of 44%, compared to a gross profit of $0.4 million and gross margin of 42% for the first quarter of 2016.
>
> Research and Development expense for the first quarter of 2017 totaled $2.4 million, down from $2.5 million in the first quarter of 2016, and Selling, General and Administrative expense increased to $5.9 million for the first quarter, compared to $1.4 million in the first quarter 2016.
>
> Operating loss for the first quarter of 2017 was $7.7 million, compared to an operating loss of $3.4 million for the first quarter of 2016.

At March 31, 2017, cash, cash equivalents and short-term investments were $66.7 million and long-term debt was $10.0 million.

31.     On the same day, May 10, 2017, Obalon filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2017 (the "Q1 2017 10-Q"). The Q1 2017 10-Q was signed by Defendants Rasdal and Plovanic, and affirmed the Company's financial results announced in the press release issued on that same day. The Q1 2017 10-Q further stated that the Company's financial statements were "prepared in accordance with U.S. generally accepted accounting principles, or GAAP." The Q1 2017 10-Q also contained signed certifications pursuant to SOX by Defendants Rasdal and Plovanic, substantially similar to the certifications described in ¶27, *supra*.

32.     On August 2, 2017, Obalon issued a press release entitled, "Obalon Announces Second Quarter 2017 Financial Results." The press release stated in relevant part:

**Second Quarter 2017 highlights:**

- Revenue grew 33% sequentially over Q1-17 to $2.0 million
- Gross margin improved to 50%
- First commercial shipments of 6-month product to Middle East in July 2017
- First US shipments of HPMC, vegetable based capsule, in July 2017

The Company reported total revenues of $2.0 million for the second quarter of 2017, compared to $0.8 million for the second quarter of 2016. Net loss was reported at $7.7 million compared to a net loss of $4.1 million in the second quarter of 2016 and net loss per share for the quarter was $0.46 as compared to net loss per share of $7.15 in the second quarter of 2016.

Cost of goods sold was $1.0 million during the three months ended June 30, 2017, up from $0.7 million for the prior year period. Gross

14

profit for the second quarter of 2017 was $1.0 million, resulting in a gross margin of 50%, compared to a gross profit of $0.1 million and gross margin of 14% for the second quarter of 2016. Research and Development expense for the second quarter of 2017 totaled $2.8 million, up from $2.6 million in the second quarter of 2016, and Selling, General and Administrative expense increased to $5.9 million for the second quarter of 2017, compared to $1.6 million in the second quarter 2016.

Operating loss for the second quarter of 2017 was $7.6 million, compared to an operating loss of $4.1 million for the second quarter of 2016.

At June 30, 2017, cash, cash equivalents and short-term investments were $60.7 million and long-term debt was $10.0 million.

33. On the same day, August 2, 2017, Obalon filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2017 (the "Q2 2017 10-Q"). The Q2 2017 10-Q was signed by Defendants Rasdal and Plovanic, and affirmed the Company's financial results announced in the press release issued on that same day. The Q2 2017 10-Q further stated that the Company's financial statements were "prepared in accordance with U.S. generally accepted accounting principles, or GAAP." The Q2 2017 10-Q also contained signed certifications pursuant to SOX by Defendants Rasdal and Plovanic, substantially similar to the certifications described in ¶27, *supra*.

34. On November 3, 2017, Obalon issued a press release entitled, "Obalon Announces Third Quarter 2017 Financial Results." The press release stated in relevant part:

**Third Quarter 2017 highlights:**

- Revenue grew 42% sequentially over Q2-17 to $2.8 million
- Gross margin improved to 53%
- First sales to multi-store aesthetic national account

15

- Submitted PMA-Supplement for Obalon Navigation System
- Submitted PMA-Supplement for Obalon Touch Inflation Dispenser

The Company reported total revenues of $2.8 million for the third quarter of 2017, compared to $0.8 million for the third quarter of 2016. Net loss was reported at $9.2 million compared to a net loss of $5.3 million in the third quarter of 2016 and net loss per share for the quarter was $0.55 as compared to net loss per share of $5.46 in the third quarter of 2016.

Cost of goods sold was $1.3 million during the three months ended September 30, 2017, up from $0.6 million for the prior year period. Gross profit for the third quarter of 2017 was $1.5 million, resulting in a gross margin of 53%, compared to a gross profit of $0.1 million and gross margin of 17% for the third quarter of 2016.

Research and Development expense for the third quarter of 2017 totaled $2.8 million, up from $2.2 million in the third quarter of 2016, and Selling, General and Administrative expense increased to $7.8 million for the third quarter of 2017, compared to $2.4 million in the third quarter 2016. Selling, General and Administrative expenses in the third quarter 2017 included a one-time, non-cash charge of $1.4 million for litigation settlement.

Operating loss for the third quarter of 2017 was $9.1 million, compared to an operating loss of $4.5 million for the third quarter of 2016. As of September 30, 2017, cash, cash equivalents and short-term investments were $53.4 million and debt was $10.0 million.

35.    On the same day, November 3, 2017, Obalon filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2017 (the "Q3 2017 10-Q"). The Q3 2017 10-Q was signed by Defendants Rasdal and Plovanic, and affirmed the Company's financial results announced in the press release issued on that same day. The Q3 2017 10-Q further stated that the Company's financial statements were "prepared in accordance with U.S. generally accepted accounting principles, or GAAP." The Q3 2017 10-Q also contained signed certifications pursuant to SOX by Defendants Rasdal and Plovanic, substantially similar to the certifications described in ¶27, *supra*.

16

36.     The statements referenced in ¶¶ 24-35 above were materially false and/or misleading because they misrepresented and/or failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company recognized revenue in violation of GAAP; (ii) the Company lacked adequate internal controls over accounting and financial reporting; and (iii) as a result, Obalon's public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

37.     On January 23, 2018, Obalon issued a press release entitled "Obalon Announces Termination of Public Offering of Common Stock," revealing that "a purported whistleblower contacted KPMG LLP, the Company's independent auditors, to make certain allegations relating to allegedly improper revenue recognition during the Company's fourth fiscal quarter of 2017." The press release stated in part:

> Obalon Therapeutics, Inc. (the "Company" or "Obalon") (NASDAQ:OBLN) today announced the termination of the underwriting agreement and cancellation of its previously announced public offering (the "Offering") of 5,454,545 shares of its common stock at a public offering price of $5.50 per share.
>
> UBS Investment Bank, Canaccord Genuity and Stifel were acting as joint book-running managers for the offering. BTIG was acting as a co-manager. The offering was being made pursuant to a shelf registration statement (File No. 333-221264) previously filed with and declared effective by the U.S. Securities and Exchange Commission.
>
> The Offering was scheduled to close on January 23, 2018. However, a **_purported whistleblower contacted KPMG LLP, the Company's independent auditors, to make certain allegations relating to_**

17

*allegedly improper revenue recognition during the Company's fourth fiscal quarter of 2017* ("Q4 2017"). These allegations were reported to Obalon late in the day on January 22, 2018, making it infeasible for the Company to complete an investigation of the allegations prior to the intended closing of the public offering.

*Obalon's Audit Committee will oversee an internal investigation of these allegations* (the "Investigation"). The Company is currently unable to predict the timing or outcome of the Investigation. Based on information known at this time, management does not currently believe material adjustments to the preliminary, unaudited revenue for Q4 2017 and full year 2017 previously reported by the Company will be required as a result of these allegations. The Company intends to make a further announcement regarding the outcome of the Investigation as soon as practicable.

(Emphasis added.)

38.     On this news, Obalon's share price fell $1.73, or 33.33%, to close at $3.46 on January 23, 2018.  The $3.46 closing price represented a total decline of $11.54, or nearly 77%, from the IPO price of $15.00 per share.

39.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Obalon common securities: (i) pursuant and/or traceable to the Company's IPO; and /or (ii) on the open market during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

41.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Obalon securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Obalon or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

42.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

43.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

44.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of Obalon;

- whether Defendants caused Obalon to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Obalon securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

45. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

46. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

20

- the omissions and misrepresentations were material;

- Obalon securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Obalon securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

47.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

48.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

21

49.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

51.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Obalon securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Obalon securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

52.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Obalon securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Obalon's finances and business prospects.

53.     By virtue of their positions at Obalon, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.   In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

54.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the

senior managers and/or directors of Obalon, the Individual Defendants had knowledge of the details of Obalon's internal affairs.

55.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Obalon.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Obalon's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Obalon securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Obalon's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Obalon securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

56.    During the Class Period, Obalon securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or

otherwise acquired shares of Obalon securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Obalon securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Obalon securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

57. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

58. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

**COUNT II**

**Violation of Section 20(a) of The Exchange Act Against The Individual Defendants**

59. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

25

60.     During the Class Period, the Individual Defendants participated in the operation and management of Obalon, and conducted and participated, directly and indirectly, in the conduct of Obalon's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's inadequate internal safeguards in data security protocols.

61.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Obalon's financial condition and results of operations, and to correct promptly any public statements issued by Obalon which had become materially false or misleading.

62.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Obalon disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Obalon to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Obalon within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Obalon securities.

63.     Each of the Individual Defendants, therefore, acted as a controlling person of Obalon.  By reason of their senior management positions and/or being directors of

Obalon, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Obalon to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Obalon and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

64. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Obalon.

## COUNT III

### (Violations of Section 11 of The Securities Act Against All Defendants)

65. Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

66. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against the Individual Defendants.

67. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

68.     Obalon is the registrant for the IPO. Individual Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

69.     As issuer of the shares, Obalon is strictly liable to Plaintiff and the Class for the misstatements and omissions.

70.     None of the Individual Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

71.     By reasons of the conduct herein alleged, each Individual Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

72.     Plaintiff acquired Obalon securities pursuant and/or traceable to the Registration Statement for the IPO.

73.     Plaintiff and the Class have sustained damages. The value of Obalon securities has declined substantially subsequent to and due to the Individual Defendants' violations.

## COUNT IV

**(Violations of Section 15 of The Securities Act Against the Individual Defendants)**

74.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

75.     This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

76.     Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Obalon within the meaning of Section 15 of the Securities Act. Individual Defendants had the power and influence and exercised the same to cause Obalon to engage in the acts described herein.

77.     Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

78.     By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post- judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: February 22, 2018

Respectfully submitted,

**POMERANTZ LLP**

By: */s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (818) 532-6499
E-mail: jpafiti@pomlaw.com

**POMERANTZ, LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:(212) 661-8665
E-mail: jalieberman@pomlaw.com
E-mail: ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
E-mail: pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

30

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.   I, _Harold Cook_, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.   I have reviewed a Complaint against Obalon Therapeutics, Inc. ("Obalon" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire Obalon securities at the direction of plaintiffs' counsel, or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Obalon securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.   To the best of my current knowledge, the attached sheet lists all of my transactions in Obalon securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.


**Executed** _____2/7/18_____

(Date)


_____

(Signature)


_____

(Type or Print Name)

**OBALON THERAPEUTICS, INC. (OBLN)**                                      **Cook, Harold**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES/UNITS | PRICE PER SHARES/UNITS |
|---|---|---|---|
| 12/12/2016 | Purchase | 3,500 | $11.1320 |